Jeff R. Dingwall (SBN: 265432)
EIGHT & SAND
550 West B Street, 4th Floor
San Diego, CA  92101
T: (619) 796-3464
F: (619) 717-8762
E: jeff@eightandsandlaw.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICKIE JACKSON, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY** |
| UNION PACIFIC RAILROAD COMPANY, | |
| Defendant. | |

### Nature of Action

1.     This is an action by Plaintiff Nickie Jackson ("Jackson") against Defendant Union Pacific Railroad Company ("UPRR") for damages and for other relief under the employee protection provisions of the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA").

**Parties**

2.      Jackson is a California resident and, at all times material was employed by UPRR in Los Angeles, California.

3.      UPRR is a rail carrier engaged in interstate commerce. UPRR operates in 23 states, including California and is one of the nation's largest railroad carriers. UPRR is a Delaware corporation and maintains its headquarters in Omaha, Nebraska.

**Jurisdiction and Venue**

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 49 U.S.C. § 20109.

5.      Venue is proper here pursuant to 28 U.S.C. § 1391 because Jackson is a California resident, and the events complained of occurred within this District.

**Statement of Facts**

6.      Jackson was employed by UPRR as a conductor from 2004 until she was terminated on or about June 17, 2019.

7.      On or about August 29, 2017, Jackson was assigned to work in or near Yuma, Arizona with UPRR engineer Mark Sylvester.



8.     While operating the train from Yuma, Arizona, Jackson and Sylvester stopped for a red signal at which time their train was boarded by four UPRR management officials including Los Angeles General Superintendent Ramiro Barba and Los Angeles Manager of Operating Practices Eric Ochs.

9.     The UPRR management officials proceeded to conduct a "stop test" during which they requested certain documents from Jackson and Sylvester and also administered a rules test. Jackson and Sylvester complied with the requests and passed the test.

10.     Shortly thereafter, Jackson was asked by the management officials if she had a "brake stick." Jackson stated her belief that brake sticks are unsafe and that they caused her shoulders to hurt when she used them and further stated her belief that they are not required. She continued to have a discussion with the management officials, including Barba, regarding the use of brake sticks and whether they are safe. Jackson then stated that she had already lost an ankle and her reproductive system to the railroad and that she didn't want to lose her shoulders too. The conversation was cordial and shortly thereafter the management officials departed the train and Jackson and Sylvester completed their work for the day.

11.     At the end of her shift, Jackson was notified that she was to have a meeting the following day, August 30, 2017, with UPRR Los Angeles Director of Road Operations Kevin Garcia.

12.     During the meeting, Garcia accused Jackson of having an "intense" conversation the prior day with Superintendent Barba. Jackson explained that it was not intense and that it was simply a conversation about safety. Garcia also questioned Jackson about her statements regarding her ankle and reproductive system. Garcia then ordered Jackson to complete UPRR personal injury reports for her ankle, her hysterectomy, and her shoulders.

13.     Jackson completed the injury reports and provided them to Garcia, who then told her that she would be contacted by the UPRR claims department. The UPRR claims department, on information and belief, is responsible for handling employee on-duty injury claims.

14.     On or about September 1, 2017, UPRR issued to Jackson a letter stating that she was being removed from service due to her "health problems" and that she would be required to submit to a medical evaluation. The letter was issued by Los Angeles General Superintendent Ramiro Barba.

15.     Pursuant to the September 1, 2017 letter, Jackson was held out of service, without pay or benefits.

16.     On or about November 28, 2017, Jackson was required by UPRR to undergo a Functional Field Evaluation, ostensibly to determine whether she was capable of performing her job duties. Jackson achieved the highest grade on each and every task required of her in the Functional Field Evaluation and was deemed capable of performing all functions of the job.

17.     On or about November 28, 2017, Jackson was released back to work by UPRR. Jackson's return to work was unjustifiably delayed or denied on numerous occasions by UPRR.

18.     In or around January 2018, UPRR denied back pay for Jackson's time out of service.

19.     On or about February 12, 2018, Jackson filed a Complaint under the Federal Railroad Safety Act with the United States Department of Labor - Occupational Safety and Health Administration, Region IX ("OSHA").

20.     On or about October 12, 2018, Regional Supervisory Investigator Mark Marchione issued Secretary's Findings as to Jackson's Complaint.

21.     On or about October 18, 2018, Jackson filed and served her Notice of Objection and Request for Hearing before the Department of Labor - Office of Administrative Law Judges ("OALJ").

22.    On or about May 20, 2019, while her FRSA complaint was pending before the OALJ, UPRR issued to Jackson a notice to attend a formal disciplinary investigation for an alleged rule violation occurring May 10, 2019. UPRR alleged that Jackson "failed to perform a proper single car securement resulting in an uncontrolled movement."

23.    On or about May 20, 2019, following the issuance of the notice to Jackson to attend a formal investigation, Jackson, through her counsel, contacted UPRR's counsel of record in the pending OALJ action and advised that the new disciplinary charges against Jackson were baseless and were clearly made in retaliation for Jackson's pending FRSA action. UPRR's counsel responded that UPRR intended to go forward with the discipline process against Jackson.

24.    Following multiple postponements, the formal investigation was conducted on June 7, 2019.

25.    Jackson was subsequently terminated via letter dated June 17, 2019 in which the Company claimed that the following charge had been sustained:

On 5/10/2019, while employed as a BRAKEMAN (ONE), you on the LOH43-10 failed to perform a proper single car securement resulting in an uncontrolled movement This [sic] is a violation of the following rule(s) and/or policy:

1.6: Conduct - Careless
32.1.4: Single Car Securement

26.     From the time of Jackson's return to duty in or around December 2017, UPRR engaged in systematic, ongoing discrimination and harassment of Jackson, culminating in the company terminating her employment on or about June 17, 2019.

27.     Though the termination was the final act, UPRR also subjected Jackson to additional adverse actions including, but not limited to, being singled out for scrutiny by Ramiro Barba on or about May 23, 2018.

28.     UPRR further took adverse actions against Jackson by denying her back pay and other benefits, including time in service, that other similarly situated employees were entitled to.

29.     The actions taken by UPRR against Jackson constitute a hostile work environment.

30.     The adverse actions taken by UPRR against Jackson were due, in whole or in part, to her protected activities, including but not limited to: (1) notifying UPRR of a work related injury or illness; (2) reporting a hazardous safety or security condition; (3) filing a complaint, or directly causing to be brought, a proceeding related to the enforcement of the FRSA against UPRR; (4) refusing to violate or assist in the violation of any Federal law, rule or regulation relating to railroad safety or security; and (5) seeking and receiving medical or first aid treatment and/or following the orders of her treating physicians.

# CAUSE OF ACTION
## VIOLATION OF THE FEDERAL RAILROAD SAFETY ACT
## (49 U.S.C. § 20109)

31.    Jackson incorporates by reference each and every preceding paragraph as though fully set forth herein.

32.    The whistleblower protection provisions of the FRSA and its implementing regulations at 29 C.F.R. § 1982 *et seq*., prohibit a railroad from, among other things, disciplining, threatening, coercing, restraining and intimidating employees who notify, or attempt to notify, the railroad carrier of a work-related personal injury or illness and/or who report to the railroad a hazardous safety or security condition. 49 U.S.C. § 20109(a).

33.    The whistleblower protection provisions of the FRSA and its implementing regulations at 29 C.F.R. § 1982 *et seq*., further prohibit a railroad from, among other things, discharging, demoting, suspending, reprimanding or in any other way discriminating against an employee for refusing to work when confronted by a hazardous safety or security condition related to the performance of the employee's duties. 49 U.S.C. § 20109(b).

34.     The whistleblower protection provisions of the FRSA and its implementing regulations at 29 C.F.R. § 1982 *et seq.*, additionally prohibit a railroad from, among other things, denying, delaying, or interfering with the medical or first aid treatment of an employee injured during the course of employment, as well as from disciplining or threatening discipline to an employee for requesting medical or first aid treatment, or for following orders or a treatment of a treating physician. 49 U.S.C. § 20109(c).

35.     Jackson engaged in multiple protected acts, as alleged in paragraphs 1 through 30, above.

36.     With knowledge of these protected acts, UPRR took adverse actions against Jackson as alleged in paragraphs 1 through 30, above.

37.     The adverse actions of UPRR were taken in whole or in part due to the protected acts of Jackson.

38.     UPRR has a history of violating the rights of workers under the FRSA.

39.     The actions taken by UPRR against Jackson were in willful and/or reckless disregard for her rights under the FRSA.

### **REQUEST FOR RELIEF**

Jackson seeks all relief under the law, including:

1.     Reinstatement with the same seniority status;

2.     Backpay, with interest;



3.      Front pay;

4.      Compensatory damages, including compensation for special

damages;

5.      Punitive damages at the statutory maximum of $250,000;

6.      Attorney and litigation costs; and

7.      Such other relief as appropriate under the circumstances.

## **PLAINTIFF DEMANDS A JURY TRIAL.**

Dated this 12ᵗʰ day of February 2020.

*s/Jeff R. Dingwall*

Jeff R. Dingwall

Attorneys for Plaintiff
